## War Veterans' Lapsed Government Insurance.

*Banks and banking—Collection of deposits by banks—Payments by war veterans—Reinstatements of lapsed insurance—Collection by street-car conductors—Banking Department—Acts of June 19, 1911, June 7, 1923, and June 15, 1923.*

1. Under the Act of June 19, 1911, P. L. 1060, conductors of a street railway company, who collect small amounts from war veterans and pay them over to a bank and trust company organized under the laws of Pennsylvania, to be used to reinstate lapsed Government insurance of the veterans, need not be licensed for that purpose. where the bank assumes responsibility for the fidelity of the conductors.

2. Under the Acts of June 7, 1923, P. L. 498, and June 15, 1923, P. L. 809, the Banking Department may determine whether such a plan is an unsafe manner of conducting a banking business, or whether it affords an adequate security and protection to depositors.

Department of Justice. Opinion to Hon. Peter G. Cameron, Secretary of Banking.

BALDRIGE, Att'y-Gen., Feb. 17, 1927. — I am in receipt of your letter of Feb. 3rd, asking for an opinion respecting the plan of the Mitten Men and Management Bank and Trust Company of Philadelphia, hereinafter referred to as the Mitten Bank, to collect and transmit funds for deposit.

The Mitten Bank is a corporation organized under the Act of April 29, 1874, P. L. 73, its supplements and amendments, and has accepted the provisions of the Act of May 9, 1889, P. L. 180.

This corporation desires to have approval of a system whereby the World War veterans who desire to reinstate their lapsed government insurance may arrange to do so by making small weekly payments to the conductors or cashiers of the Philadelphia Rapid Transit Company, who, in exchange for the cash thus received, will furnish the depositors with receipts in the name of the Mitten Bank. The funds collected by the conductors are to be turned over to the transit company's cashiers, located in different parts of the city, who, in turn, will deliver them to the Mitten Bank at their principal place of business.

The conductors and cashiers are the employees of the Philadelphia Rapid Transit Company, but the Mitten Bank is to assume responsibility for their actions and their fidelity. This present plan contemplates that the conductors and cashiers will receive, from any one depositor, cash up to and including

War Veterans' Lapsed Government Insurance.

$20. The depositor is supplied with an envelope bearing his account number, which number the conductor or cashier notes upon the stub he retains. The money intended to be deposited in the bank is required to be transported thereto within twenty-four hours after it has been receipted for by the conductor or cashier, as well as the receipt stubs, so that credit may be entered upon the books of the bank to the proper individual.

Section 20 of the Banking Act of June 15, 1923, P. L. 809, provides: "Whenever it shall appear to the secretary that any corporation or person under the supervision of the department has violated any provision of this act or any law regulating the business of such corporation or person, or is conducting business in an unauthorized or unsafe manner, or that any such corporation has an impairment of capital, the secretary may issue an order, under his hand and seal of office, directing such corporation or persons to discontinue such violation of law or such unauthorized or unsafe practices, or directing such corporation to make good, within a time of not more than sixty days after notice by the secretary, any impairment or deficiency of capital."

Section 1 of the Act of June 19, 1911, P. L. 1060, to which you refer, provides: "That, except as provided in section 8, no individual, partnership or unincorporated association shall hereafter engage, directly or indirectly, in the business of receiving deposits of money for safekeeping or for the purpose of transmission to another, or for any other purpose, without having first obtained from a board . . . a license to engage in such business." The purpose of this legislation was to afford protection to the depositor or party giving money for transmission.

The question raised is whether, under the proposed plan, the Mitten Bank would be conducting business "in an unauthorized or unsafe manner" or in violation of the Act of 1911. We shall discuss the latter branch of the question first.

The Mitten Bank, under the proposed plan, would be the responsible party and not its agents, to wit, the conductors and cashiers acting within the scope of their authority.

The Act of 1911 does not contemplate covering messenger service or agents of the character under consideration. It cannot be said that the street-car conductors or cashiers are engaged in the business of receiving deposits or of transmitting them to another. Their receipt of money under the proposed plan would merely be an incidental duty in connection with their employment. The transaction is one between the bank and the depositor, and, therefore, it would not be necessary to obtain a license under the Banking Act of June 19, 1911.

This statutory provision is not applicable, and I find no other law prohibiting the service contemplated.

It is entirely within your authority, however, as Secretary of Banking, to determine whether such a plan is an unsafe manner of conducting business. Under the Administrative Code of June 7, 1923, P. L. 498, the Department of Banking shall "enforce and administer the laws of this Commonwealth in relation to all corporations and persons under its jurisdiction, and shall see that the greatest possible safety is afforded to depositors therein or therewith and to other interested persons."

Under the authority vested in you by the provisions last quoted, when read in conjunction with section 20 of the Act of June 15, 1923, it is within your rights to determine whether this plan affords adequate security and protection to depositors.

From C. P. Addams, Harrisburg, Pa.